UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MILL-RUN TOURS, INC.,

        Plaintiff,

– against –

WINDSTREAM SERVICES LLC, F/K/A
WINDSTREAM CORPORATION, PAETEC
COMMUNICATIONS LLC, F/K/A PAETEC
CORPORATION, A WINDSTREAM
CORPORATION,

        Defendants.

**OPINION AND ORDER**

16 Civ. 7052 (ER)

---

Ramos, D.J.:

    Mill-Run Tours, Inc. ("Mill-Run" or "Plaintiff") brought this action against Windstream Corporation ("Windstream") and Paetec Communications LLC ("Paetec"), alleging breach of contract and breach of warranty and seeking damages. Before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 23). For the reasons stated below, Defendants' motion is GRANTED.

**I.    Factual Background**[1]

    Plaintiff is a consolidator of airline tickets for different airlines and supplies tickets to travel agents in the industry. Am. Compl. ¶ 3. Windstream is a provider of voice and data network communications, including cloud computing and managed services to businesses in the United States. *Id.* at ¶ 5. Paetec is a subsidiary of Windstream. *Id.* at ¶ 7.

---

[1] The following factual background is based on allegations in the Amended Complaint ("Am. Compl."), Doc. 18, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

In 2011, Plaintiff was in the market for a new voice and data communications provider. Am. Compl. ¶ 11. After being introduced to Windstream and Paetec by a communications broker, Plaintiff explained that it was having quality problems with its current provider and could not afford to have this continue. *Id.* at ¶¶ 12–13. According to Plaintiff, Windstream made it clear that its product was superior and more technologically advanced than what Plaintiff was using at the time. *Id.* at ¶ 14. Windstream assured Plaintiff that it understood the reputational and financial damages Plaintiff would suffer if there was an interruption of service, and that it would never happen with Windstream as the provider. *Id.* at ¶¶ 15–16, 38.

Based on these assurances, Plaintiff decided to engage Windstream as its service provider. *Id.* at ¶ 17. On September 15, 2011, Plaintiff and Paetec entered into a Service Agreement under which Paetec agreed to provide Plaintiff with voice and communications services at Plaintiff's main office in New York City and ten other offices in the United States. *Id.* at ¶ 18. Plaintiff agreed to pay a monthly fee for the service. *Id.*

The Service Agreement, on its first page, expressly incorporated by reference the Standard Terms and Conditions of Service ("Standard Terms") on Paetec's website, and provides the website address with a direct link.[2] Fellner Decl. Ex. A, at 1. The Standard Terms state that they apply to "the provisions of all telecommunications and related services . . . by PAETEC . . . to Customers under the service agreement . . . to which this schedule is a part." Fellner Decl. Ex. B, at 1. The Standard Terms contain a "Limitation of Liability" provision that expressly bars any party from claiming "indirect, special, incidental, consequential or exemplary damages,

---

[2] In the Complaint, Plaintiff refers to but does not provide the Service Agreement or the Standard Terms as appendix. Courts may look to the documents that are referenced or are integral to the complaint for motion to dismiss purposes. *Faulkner v. Beer*, 463 F.3d 130, 134 (2nd Cir. 2006). Therefore, the Court will consider the Service Agreement and the Standard Terms attached in Fellner's Declaration for the instant motion. (Fellner Decl. Ex. A & B).

including . . . damages for loss of revenue, loss of profits, or loss of customers, clients or goodwill . . ." for nonperformance. *Id.* at 3. The Standard Terms further provides that remedy for a service interruption is limited to an outage credit.[3] *Id.* at 4.

Defendants were Plaintiff's voice and data communications service provider from 2012 to 2015. Am. Compl. at ¶ 19. Although there were a few glitches over those four years such as power interruptions, Plaintiff did not complain about these interruptions during this period. *Id.* at ¶ 20. However, On May 7, 2015, the telephone and data services at Plaintiff's office completely failed. *Id.* at ¶ 21. According to Plaintiff, Defendants failed to respond to its numerous calls and emails and did not provide any updates for a period of days. Defendants also gave Plaintiff the "runaround" with auto replies stating that repair tickets had been issued and that the system was running when in reality it was not functioning. *Id.* at ¶¶ 22–23. The service interruption lasted for a total of six days (144 hours). *Id.* at ¶ 28. Plaintiff alleges that Defendants never provided an explanation regarding the cause of the service disruption. *Id.* at ¶ 29.

On May 13, 2015, Plaintiff sent a letter to Windstream terminating the Service Agreement with Windstream and Paetec. *Id*. According to Plaintiff, as a result of the extended disruption of service, customers were unable to reach Plaintiff, and Plaintiff suffered reputational damages, loss of sales, and loss of existing and new clients calculated to be in the millions of dollars. *Id.* at ¶¶ 33–36.

**II.    Procedural Background**

On July 12, 2016, Plaintiff filed an action against Defendants in New York County Supreme Court, alleging breach of contract, negligence, and punitive damages. Doc. 1, Ex. A. On September 9, 2016, Defendants removed the action to this Court. Doc. 1. Plaintiff filed an

---
[3] Defendants note that Plaintiff has never sought an outage credit in connection with the service interruption and therefore cannot assert that it was ever denied one.

3

Amended Complaint on December 8, 2016, alleging breach of contract and breach of warranty and seeking consequential damages. Am. Compl., Doc. 18. Defendants filed the instant motion to dismiss Plaintiff's Amended Complaint on February 3, 2017. Doc. 23.

### III. Legal Standard

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### IV. Discussion

Plaintiff asserts two claims against Defendants: breach of contract and breach of warranty. The Court will address each in turn.

#### A. **Breach of Contract**

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer &*

4

*Mandell, LLP v. Citibank N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citations omitted). Plaintiff alleges that (1) it entered into a Service Agreement with Defendants; (2) Plaintiff performed by paying monthly fees; (3) Defendants breached the Service Agreement by failing to provide service for six days; and (4) Plaintiff suffered damages to its reputation, as well as a loss of substantial revenue, existing clients, and potential clients. Am. Compl. ¶¶ 42–44; Pl.'s Opp. Mem. at 8.

Defendants argue that Plaintiff's breach of contract claim should be dismissed because Plaintiff's alleged damages—including loss of sales, customers, and good will—are "special, incidental, and/or consequential damages" that are expressly barred by the Limitation of Liability clause in the Standard Terms incorporated into the Service Agreement. Defs.' Mem. at 8–9. Generally, New York law recognizes limitation of liability provisions as an "allocation of risk of economic loss in the event that the contemplated transaction is not fully executed." *My Play City, Inc. v. Conduit Ltd.,* 589 Fed.Appx. 559, 562 (2d Cir. 2014); *see also Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994) ("[Parties] may later regret their assumption of the risks of non-performance in this manner, but the courts let them lie on the bed they made."). However, the enforceability of limitation of liability provisions is not limitless and is subject to a few exceptions. As Defendants note, a contract provision limiting liability or damages is not enforceable if there is a special relationship between the parties, a statutory prohibition, or an overriding public policy against it. Defs.' Mem. at 9; *Smith-Hoy v. AMC Prop. Evaluations, Inc.*, 52 A.D.3d 809, 810 (2d Dep't 2008). Additionally, a party may not limit its liability for damages caused by its own willful misconduct or gross negligence. *Smith-Hoy,* 52 A.D.3d at 810.

In arguing that the Limitation of Liability clause should not be enforced, Plaintiff does not rely on any of the identified exceptions to the general enforceability of limitation of liability provisions. Instead, Plaintiff contends that the Court should not enforce the clause because it gives Defendants "an unfair and unreasonable advantage over Mill-Run." Pl.'s Opp. Mem. at 9. According to Plaintiff, "[c]ourts may take into consideration the fact that one construction of a contract would make the contract unreasonable and endeavor to give the construction most equitable to both parties instead of one construction that will provide one of the parties with an unfair or unreasonable advantage over the other." Pl.'s Opp. Mem. at 9 (citing *Friedman v. Egan*, 64 A.D.2d 70, 82).

Plaintiff's argument misses the point—the issue at hand does not involve contract construction. The Limitation of Liability clause clearly and explicitly bars Plaintiff from seeking consequential damages, and neither party argues—and the Court does not find—that the provision is ambiguous. Furthermore, the case Plaintiff cites to support its argument is inapposite. In that case, the court constructed the contract to avoid inequitable treatment of the plaintiff—a 75-year-old widow with no business knowledge—because the defendant was a sophisticated art dealer, the defendant had drafted the contract, and the contract provision at issue was ambiguous. *See Friedman*, 64 A.D.2d 70. In this case, however, Plaintiff is a highly sophisticated party, as evidenced by its own factual allegations that it is one of the largest travel consolidators of airline tickets in the country, that it has been in business since 1974, and that the parties signed the Service Agreement after negotiations. Am. Compl. ¶¶ 3, 14–17, 31. Unlike the parties in *Friedman*, there is no disparity in bargaining power between Plaintiff and Defendants that would trigger the equity concern that informed the *Friedman* decision.

6

Plaintiff also argues against enforcement of the Limitation of Liability clause on the ground that the Standard Terms "were written in fine print and located inside Windstream's website," and thus a reasonable person would have a hard time finding the clause. Pl.'s Opp. Mem. at 9. Plaintiff's contention is unfounded. The Service Agreement clearly identifies and incorporates the Standard Terms on its very first page, and it provides the website address with a direct link. Additionally, the Limitation of Liability clause is boldfaced and in capital letters, making it stand out among other terms in lowercase text. Fellner Decl. Ex. B, at 3. Courts in this district have held that similar limitation of liability clauses—headings in boldface and written in all capital letters in contrast to other provisions—are sufficient to place a party on reasonable notice. *Tulger Contracting v. Star Building Systems, Inc.,* 2002 WL 986994 at *2 (S.D.N.Y. 2002). Plaintiff cannot claim that it failed to read the clause when the contract terms were neither buried nor inconspicuous. Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim is GRANTED. However, should Plaintiff so choose, it is granted leave to amend its breach of contract claim.

### B. Breach of Warranty

Plaintiff alleges that it relied on Defendants' assurances that their voice and data services were on par, if not superior, to the services of other companies, and that Defendants breached a warranty by failing to repair and provide the services it agreed to provide within a reasonable time. Am. Compl. ¶¶ 46–47.

In New York, express and implied warranties apply only to the sale of goods; there is no cause of action for breach of warranty in the performance of a service. "[A]ll transactions where service predominates are indeed immune from express and implied warranty analysis." *B.C.F. Oil Ref. v. Consolidated Edison Co.,* 982 F.Supp. 302, 308 (S.D.N.Y. 1997) (internal quotation

marks omitted); *see also Stafford v. Int'l Harvester Co.,* 668 F.2d 142, 147 (2d Cir.1981) (affirming dismissal of breach of express and implied warranties claims because the underlying nature of the transaction was that of a contract for repairs). Although "a hybrid service-sale transaction can give rise to a cause of action for breach of warranty," it may only do so "if the sales aspect of the transaction predominates and the service aspect is merely incidental." *Stafford,* 668 F.2d at 146 (internal quotation marks omitted). Therefore, the threshold question here is whether the Service Agreement is one predominately for goods or for services.

Plaintiff does not dispute that a service contract is not subject to a breach of warranty claim. Pl.'s Opp. Mem. at 9. Instead, it argues—for the first time in its opposition to the instant motion— that modems were supplied as part of the Service Agreement, and that the six-day service disruption was due to the outage of the modems. *Id.* Plaintiff did not mention the modems or any issues with them in its Amended Complaint. Courts have uniformly held that a complaint cannot be amended by the opposition brief. *Lazaro v. Good Samaritan Hosp.,* 54 F.Supp.2d 180, 184 (S.D.N.Y. 1999); *see also Baez v. N.Y.,* 56 F. Supp. 3d 456, 470 (S.D.N.Y. 2014) (refusing to consider plaintiff's claim that was first brought up in its opposition to the motion to dismiss). Here, Plaintiff is, in effect, attempting to amend its complaint by making new factual allegations in its opposition to the instant motion, which is not allowed. Therefore, the Court will not consider the new facts alleged in Plaintiff's opposition brief.

Moreover, if Plaintiff had previously made factual allegations regarding the modems, Plaintiff's Amended Complaint nevertheless indicates that the Service Agreement was primarily a contract for services: Plaintiff purchased voice and data communications *services* from Defendants; Defendants were Plaintiff's *service* provider for over four years; the event that led to this action was a *service* interruption. Am. Compl. ¶¶ 17–19, 21, 28, 40. The Service

Agreement itself refers only to the provision of services, and does not mention the sale of any goods. Fellner Decl. Ex. A. Additionally, Plaintiff alleges that Defendants breached an alleged warranty that their voice and data *services* were on par, if not superior, to other companies. Am. Compl. ¶ 46. Plaintiff's breach of warranty claim is predicated on a failure to perform services, and not on a sale of goods.

Additionally, even if the Service Agreement predominantly involved a sale of goods, the assurances Defendants allegedly made to Plaintiff are nonactionable puffery rather than a warranty. Courts in this district have uniformly held that generalized statements of a product's superiority are nonactionable puffery. *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996); *See also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) ("[Puffery is] a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion."). Accordingly, Defendants' motion to dismiss Plaintiff's breach of warranty claim is GRANTED.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiff's Amended Complaint is GRANTED without prejudice. Plaintiff may file an amended breach of contract claim, if at all, by July 21, 2017. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 23.

It is SO ORDERED.

Dated: July 6, 2017
       New York, New York

                                      Edgardo Ramos, U.S.D.J.